```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA**

        **Plaintiff,**

v.                      //    CIVIL ACTION NO. 1:16CV42
                                    (Judge Keeley)

**GARY WALDEN;**
**BRIAN CARL WALDEN,**
**as Conservator for Gary Walden,**
**a protected person;**
**BRIAN CARL WALDEN,**
**as Administrator CTA of the Estate**
**of the deceased Tina Walden;**
**WALDEN HOMES, LLC;**
**d/b/a Walden Rentals; and**
**973 CHESTNUT RIDGE ROAD, INC.**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING THE MOTION OF THE UNITED STATES TO HOLD DEFENDANTS IN CIVIL CONTEMPT [DKT. NO. 74]

Pending is the motion of the United States of America ("United States"), seeking to hold the defendants in civil contempt for failing to obey a consent decree entered by the Court on July 10, 2017. For the reasons that follow, the Court **GRANTS** the motion (Dkt. No. 74).

**I.**

The United States initiated this action to enforce Title VII of the Civil Rights Act of 1968 (the "Fair Housing Act"), as amended, 42 U.S.C. § 3601, et seq. According to the United States, the defendants, Gary Walden, Tina Walden, Walden Homes,

**MEMORANDUM OPINION AND ORDER GRANTING THE MOTION OF THE UNITED STATES TO HOLD DEFENDANTS IN CIVIL CONTEMPT [DKT. NO. 74]**

LLC d/b/a Walden Rentals, and 973 Chestnut Ridge Road, Inc., engaged in unlawful discrimination on the basis of sex by subjecting female tenants at their rental properties to severe, pervasive, and unwelcome sexual harassment in violation of the Fair Housing Act. Specifically, over a period of at least nine years Gary Walden engaged in egregious acts of sexual harassment against female tenants and prospective tenants at the residential rental properties he owned and managed in the Morgantown, West Virginia area. See Dkt. No. 31.

Gary Walden's discriminatory conduct included, but was not limited to, the following: engaging in unwelcome sex acts with his female tenants; engaging in unwanted sexual touching and groping; conditioning or offering tangible housing benefits in exchange for performance of sex acts; touching himself in a sexual manner and exposing himself in the presence of female tenants; making unwanted and unwelcome sexual comments and advances; entering the apartments of female tenants without permission or notice to sexually harass them; and taking or threatening to take adverse housing actions against female tenants who refused or objected to his sexual advances. Id. at

**UNITED STATES V. WALDEN, ET AL.**                              **1:16CV42**

**MEMORANDUM OPINION AND ORDER GRANTING THE MOTION OF THE UNITED STATES TO HOLD DEFENDANTS IN CIVIL CONTEMPT [DKT. NO. 74]**

4-5. Tina Walden failed to take appropriate steps to remedy the discrimination after receiving tenant complaints about sexual harassment. Indeed, she took adverse housing actions, or threatened such actions, in retaliation for discrimination complaints. Id. at 5-6.

The United States charged that Tina Walden, Walden Homes, LLC, and 973 Chestnut Ridge Road, Inc. were liable for the discriminatory conduct of Gary Walden, who was acting as their agent, and that Gary Walden, Walden Homes, LLC, and 973 Chestnut Ridge Road, Inc. were liable for the discriminatory conduct of Tina Walden, who was acting as their agent. Id. at 6.

According to the United States, as a consequence of these acts and statements, the defendants (1) denied housing or otherwise made housing unavailable because of sex in violation of 42 U.S.C. § 3604(a); (2) discriminated in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b); (3) made statements with respect to the rental of dwellings that indicate a preference, limitation, or discrimination based on sex, in

3

violation of 42 U.S.C. § 3604(c); and (4) coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under Section 804 of the Fair Housing Act, all in violation of 42 U.S.C. § 3617. Id. at 7. The United States further asserted that female tenants and prospective tenants were injured by the defendants' discriminatory conduct, and that the defendants' conduct was intentional, willful, and taken in reckless disregard for the rights of others. Id. at 8.

Through mediation, the parties settled their dispute prior to trial. Consequently, on July 10, 2017, the Court entered a consent decree ("Consent Decree," or "Decree") (Dkt. No. 73), requiring the defendant to deposit $500,000.00 into a Settlement Fund for the purpose of compensating the victims harmed by Gary Walden's sexual harassment. Id. at ¶ 22. They agreed to deposit a first payment of $100,000.00 into the Settlement Fund within thirty (30) days of entry of the Decree, and to deposit the remaining balance of $400,000.00 into the Settlement Fund by January 15, 2018. Id. Further, the terms of the Consent Decree also required the defendants to pay $100,000.00 in civil

4

penalties to the United States by January 15, 2018. Id. at ¶ 33. Finally, pursuant to the Consent Decree, the Court retained jurisdiction over the case in order to enforce compliance with its terms. Id. at ¶ 38.

Of critical importance to the pending motion, although the defendants deposited the initial $100,000.00 payment into the Settlement Fund on August 10, 2017, they never paid the balance of $400,000.00 to the Settlement Fund, nor did they pay $100,000.00 in civil penalties to the United States. The United States communicated with counsel for the defendants on numerous occasions in an effort to secure compliance with the Consent Decree (Dkt. Nos. 74 at 3; 75 at 3), but those efforts proved unavailing. See also Dkt. No. 75-1, Exhibit 1, Letter from Jackson to Armistead and Scudiere. There is no dispute that the defendants are "fully aware" of their obligations under the Decree (Dkt. No. 75 at 4-5). Indeed, they have conceded that they both failed to deposit the additional funds into the Settlement Fund and also to pay the civil penalties to the United States. Id.

**II.**

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." Render's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship, 608 F. App'x 130, 131 (4th Cir. 2015) (unpublished decision) (quoting Shillitani v. United States, 384 U.S. 364, 370 (1966)); see also Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). The Court may impose sanctions for civil contempt "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." In re Gen. Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995) (citation omitted). "The appropriate remedy for civil contempt is within the court's broad discretion." Id. at 259.

Civil contempt is appropriate if the order said to be violated "set[s] forth in specific detail an unequivocal command" that is "clear and unambiguous." Id. Therefore, in order to establish that the defendants should be held in civil contempt, the United States must prove, by clear and convincing evidence, the following factors:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive

> knowledge; (2) the decree was in favor of the party moving for contempt; (3) the alleged contemnor violated the terms of the decree by its conduct, and had actual or constructive knowledge of such violation; and (4) the moving party was harmed by the violation.

Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (citation omitted). Here, the United States has met this heavy burden.

**III.**

**A. The Consent Decree is a valid decree of which the defendants had actual or constructive knowledge.**

The United States first must establish the existence of a valid decree of which the defendants had actual or constructive knowledge. Ashcraft, 218 F.3d at 301. As already discussed, the parties voluntarily resolved this litigation through a negotiated Consent Decree, which the Court entered as an Order on July 10, 2017 (Dkt. No. 73). The terms of the Decree were negotiated during mediation sessions attended by the guardian ad litem for Gary Walden and defense counsel for the other defendants. See Dkt. No. 75-1 at ¶ 4. All of the defendants agreed to the terms of the Decree as evidenced by the signatures of their representatives (Dkt. No. 73 at 15). Further, pursuant

to the terms of the Decree, on August 10, 2017, they made the initial deposit of $100,000.00 into the Settlement Fund. See Dkt. No. 75-2 at ¶ 4. Finally, they have not disputed that the Consent Decree is a valid decree of which they had actual knowledge. See Dkt. No. 76. The United States, therefore, has satisfied its burden with regard to the first factor.

**B.     The Consent Decree was in the United States's favor.**

Second, the United States must establish that the Consent Decree was in its favor. Ashcraft, 218 F.3d at 301. The defendants do not dispute this factor. See Dkt. No. 76. The Decree unambiguously orders them to deposit money into a Settlement Fund to compensate persons harmed by their conduct and to pay civil penalties to the United States to vindicate the public interest. Further, it enjoins Gary Walden from engaging in certain activities, including entering the premises of or performing management responsibilities at any of the subject rental properties, and initiating or knowingly participating in any direct personal contact with any current or past tenant. See Dkt. No. 73 at 5-11. The United States, therefore, has satisfied its burden with regard to the second factor.

**C.    The defendants knowingly violated the Consent Decree.**

Third, the United States must establish that the defendants knowingly violated the terms of the Consent Decree. <u>Ashcraft</u>, 218 F.3d at 301. The Decree required the defendants to deposit an additional $400,000.00 into the Settlement Fund and to pay $100,000.00 in civil penalties to the United States by January 15, 2018 (Dkt. No. 73 at ¶¶ 22, 33). When the defendants failed to make these payments, the United States discussed these outstanding obligations with defense counsel and Walden's guardian <u>ad litem</u> on numerous occasions (Dkt. No. 75-1).

The defendants do not dispute their failure to comply with the clear and unequivocal terms of the Consent Decree. <u>See</u> Dkt. No. 76. Nor do they dispute their constructive, if not actual, knowledge of these violations. Indeed, they concede that they are "fully aware of the[ir] obligations" under the Decree. <u>Id.</u> at 1. Rather, they claim that a "range of factors outside of their control" have prevented them from fulfilling their payment obligations, making timely performance under the Decree "impossible" (Dkt. No. 76 at 1-2).

**UNITED STATES V. WALDEN, ET AL.**                          **1:16CV42**

**MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES'S
MOTION TO HOLD DEFENDANTS IN CIVIL CONTEMPT [DKT. NO. 74]**

A party facing sanctions for civil contempt may assert the defense of "a *present* inability to comply with the order in question." United States v. Rylander, 460 U.S. 752, 757 (1983) (citations omitted) (emphasis in original). It is well settled, however, that in raising this defense, it is the defendant who bears the burden of production. Id. Thus, in order to purge himself of civil contempt, a defendant must affirmatively produce evidence showing a present inability to comply with the order in question. See United States v. Butler, 211 F.3d 826, 831 (4th Cir. 2000).

Courts have held that "[c]onclusory assertions of financial inability . . . are insufficient to satisfy this burden." S.E.C. v. SBM Inv. Certificates, Inc., No. 1:06-CV-0866-DKC, 2012 WL 706999, *11 (D.Md. Mar. 2, 2012) (citations omitted). "Rather, the [defendants] must show that they acted in good faith and took all reasonable efforts to comply with the court's order." Id. Moreover, "inability to comply is only a 'complete defense' if the party is unable to comply in *any* manner with a court's order." First Mariner Bank v. Resolution Law Grp., P.C., No. MJG-12-1133, 2014 WL 1681986, at *2 (D. Md. Apr. 28, 2014)

(emphasis added). "[O]therwise, in order to demonstrate that they have undertaken reasonable and good faith efforts to comply, [ ] the party must pay to the extent that [its] finances would allow." SBM Inv. Certificates, 2012 WL 706999, at *11 (citing Loftus v. Se. Pa. Transp. Auth, 8 F.Supp.2d 464, 468 (E.D.Pa. 1998), aff'd, 187 F.3d 626 (3rd Cir. 1999)).

Here, the defendants have failed to meet their burden. Beyond merely asserting their financial inability, they have failed to affirmatively produce evidence of their "present inability to comply with the order in question." See generally Dkt. No. 76 at 1-3; see also Butler, 211 F.3d at 831 (a defendant asserting that compliance with court order is "impossible" has "the burden of producing evidence that he presently lack[s] the funds to comply"). They have submitted no bank statements, account records, or other financial documents tending to corroborate their purported inability to pay. Other than pointing to an alleged inability "to obtain a loan secured by the real estate" or to borrow money "from any private sources," Dkt. No. 76 at 2, they have produced no evidence that they in good faith have made "all reasonable efforts to comply"

11

with the Court's Order. SBM Inv. Certificates, 2012 WL 706999, at *11.

Significantly, the defendants concede that they own "more than $700,000.00 worth of property," which could be sold to satisfy their payment obligations under the Consent Decree (Dkt. No. 76 at 2). But they have not sold these properties because Gary Walden "intends to transfer his interest in [these] properties to his children." Id. In the face of their obligations under the Consent Decree, they credulously submit that a "forced sale" of the properties at below fair market value "would only punish innocent persons not party to the Consent [Decree]." Id.

This argument is unconvincing. As an initial matter, obtaining fair market value for the sale of the defendants' real estate is not a condition of the Consent Decree. Fulfilling payment obligations to the Settlement Fund and to the United States, on the other hand, is "an unequivocal command." See Dkt. No. 73 at ¶¶ 22, 33. That the defendants might have to sell properties at below fair market value does not vitiate their

obligation to comply with the clear and unambiguous terms of the Consent Decree.

Further, as the United States emphasizes, the "innocent persons" at issue in this case are the defendants' former female tenants and prospective tenants who have yet to be compensated for the harms they suffered as a result of Gary Walden's conduct. Thus, the defendants have wholly failed to demonstrate that they have undertaken reasonable and good faith efforts to comply with the Consent Decree by "paying to the extent that their finances would allow." SBM Inv. Certificates, 2012 WL 706999, at *11.

Finally, the defendants' contention that they did not have "full knowledge or appreciation of" the supposed financial impediments to their compliance is specious. See Dkt. No. 76 at 1. All the parties to the Consent Decree negotiated and agreed to terms that clearly contemplated the defendants would pay monies into the Settlement Fund and to the United States by a date certain. Having been intimately involved in the lengthy negotiations that resulted in the settlement, it is beyond question that the defendants were well aware of their own

financial circumstances at the time they obligated themselves to the terms of the Consent Decree. For the same reasons, they also have been fully aware of those obligations since that time.

The evidence is clear and convincing that the defendants have knowingly violated the terms of the Consent Decree by failing to deposit $400,000.00 into the Settlement Fund to compensate aggrieved persons, and failing to pay $100.000.00 in civil penalties to the United States, both by January 18, 2018 (Dkt. No. 73 at ¶¶ 22, 33). Further, they have wholly failed to satisfy their burden of proving the defense of a "present inability to pay." The United States, therefore, has satisfied its burden with regard to the third <u>Ashcraft</u> factor.

**D.   The United States has suffered harm due to violations of the Consent Decree.**

Finally, the United States must establish that it suffered harm as the result of the defendants' violations of the Consent Decree. <u>Ashcraft</u>, 218 F.3d at 301. According to the United States, without the additional $400,000.00 the defendants are required to deposit into the Settlement Fund, it cannot adequately compensate all of the victims harmed by the defendants' violations of the Fair Housing Act (Dkt. No. 75 at

14

5). In addition to the fifteen (15) persons identified in the Consent Decree, Dkt. No. 73 at App'x B, the United States is investigating whether additional aggrieved persons should be compensated from the Fund. See id. at 73; see also Dkt. No. 75-2 at ¶¶ 8-9. It asserts that, given the nature and extent of the harm inflicted by the defendants, the $100.000.00 previously deposited is insufficient to adequately compensate all aggrieved persons who may have been harmed by Gary Walden's sexual harassment, which occurred over a period of at least nine years (Dkt. No. 75 at 5-6).

In addition, the United States contends that it has clearly suffered harm because of the loss of resources it has had to expend to enforce the Decree and prosecute this motion. See Summerville v. Local 77, No. 1:06CV00719, 2008 WL 3983118, at *5 (M.D.N.C. Aug. 26, 2008). The defendants have neither disputed nor otherwise responded to this contention. The United States, therefore, has satisfied its burden as to the fourth factor.

**IV.**

In conclusion, for the reasons discussed, the Court **GRANTS** the motion of the United States (Dkt. No. 74) and **HOLDS** the

**UNITED STATES V. WALDEN, ET AL.**                              **1:16CV42**

**MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES'S
MOTION TO HOLD DEFENDANTS IN CIVIL CONTEMPT [DKT. NO. 74]**

defendants in civil contempt. Furthermore, the Court **ORDERS** the parties to submit briefs on the appropriate remedy in this case. The United States shall file an opening brief no later than **March 15, 2019.** The defendants shall respond by **March 29, 2019.** The United States may file a reply no later than **April 5, 2019.**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and the guardian <u>ad litem</u>.

DATED: March 4, 2019

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE